United States District Court
Southern District of Texas

**ENTERED**

May 22, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROGER  LERMA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-386 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional

Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit

in Beeville, Texas.  Proceeding *pro se* and *in forma pauperis*, Petitioner filed an original

habeas corpus petition pursuant to 28 U.S.C. § 2254 on September 8, 2016 (D.E. 1).[1]

Petitioner claims that his right to due process was violated in a disciplinary hearing that

was held at the McConnell Unit which resulted in the imposition of punishment.

Respondent filed a motion for summary judgment on December 29, 2016 to which

Petitioner responded on April 24, 2017 (D.E. 8, 12).  As discussed more fully below, it is

respectfully recommended that Respondent's motion for summary judgment be granted

---

[1] Pleadings submitted by inmates generally are considered filed as of the date they are
placed in the prison mail system, as long as the prisoner states under penalty of perjury
the date that he placed the petition in the mail system. *See Spotville v. Cain*, 149 F.3d
374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.  Petitioner in
this case stated under penalty of perjury that he placed the petition in the prison mail
system on September 8, 2016 and it is considered filed as of that date.

and Petitioner's habeas corpus petition be denied.  It is further recommended that a Certificate of Appealability be denied.

## JURISDICTION

Jurisdiction and venue are proper in this court because the actions about which Petitioner complains occurred in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of Texas.   28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a twenty-five year sentence for murder concurrently with two twenty-year sentences for aggravated assault (Ex. A to Mot. for Sum. Jmt.; D.E. 8-1).  Petitioner does not complain about his holding convictions, but challenges the results of a disciplinary hearing.  In disciplinary case number 20150342019 Petitioner was accused and found guilty of participating in the introduction of narcotics into a correctional facility, engaging in organized crime, and bribery of a public official (DHR at p. 1; D.E. 9-2 at p. 3).[2]

In the offense report, the charging officer, S. Perez, wrote that on July 29, 2015, TDCJ-CID officials concluded an investigation of a criminal conspiracy involving Petitioner.  Based on information obtained through the Offender Telephone System (OTS) and other corroborating evidence, Petitioner was involved in the introduction of narcotics into the McConnell Unit, had engaged in organized crime, and had bribed a public official.  When Petitioner's property was searched, he was found to have in his

---

[2] "DHR" refers to the Disciplinary Hearing Record located at D.E. 9-2.

possession four Western Union numbers with dollar amounts of $50 to $350.  The Office

of Inspector General (OIG) verified that the numbers were confirmed money transactions

in the criminal conspiracy (DHR at p. 9; D.E. 9-2 at p. 11).

      During the investigation of the incident, Petitioner said that he did not do any of

the actions of which he is accused.  He said that prison officials mixed his property up

with that of another offender and that the notes and photos in the property did not belong

to him.  He also stated that he did not have telephone privileges  (DHR at p. 10; D.E. 9-2

at p. 12).

      At the hearing, Petitioner repeated his defense that he had nothing to do with the

alleged activities and that his property must have been mixed up with another person's

property because the items described were not his (DHR at p. 2; D.E. 9-2 at p. 4).  The

charging officer testified via telephone that the charges against Petitioner were the result

of an investigation that started in October 2014.  The officers searched Petitioner's cell

and found the Western Union numbers.  The officer also testified that Petitioner tried to

flush the numbers down the toilet but officers retrieved them.  Evidence included written

notes by someone named "Troy" that were found in Petitioner's belongings.  The officer

testified that they obtained evidence from the OTS and that facts were corroborated by an

individual (DHR at pp. 2-3; D.E. 13-2 at pp. 4-5).

      Petitioner was found guilty based on the charging officer's report and testimony

and on a statement from OIG.  He was punished with the loss of forty-five days of

recreation, commissary and telephone privileges, was reduced in Line Class from S3 to L1,[3] and lost 364 days of good time (DHR at p. 1; D.E. 9-2 at p. 3).

Petitioner filed a Step 1 grievance in which he complained that his procedural and constitutional rights were violated and that there was insufficient evidence to support the finding of guilt (DGR at pp. 1-2; D.E. 9-1 at pp. 3-4).[4]   Petitioner was denied administrative relief (DGR at p. 2; D.E. 9-1 at p. 4).   He filed a Step 2 grievance and again was denied administrative relief (DGR at pp. 3-4; D.E. 9-1 at pp. 5-6).

In his complaint, Petitioner asserts that his Fourteenth Amendment right to due process was violated when (1) TDCJ-CID did not follow proper procedures during the investigation of his case and at the hearing; (2) He was denied a copy of the hearing recording and evidence that he needed to appeal the finding of guilt; and (3) The evidence was insufficient to sustain a finding of guilt.   In her motion for summary judgment Respondent contends that because Petitioner is not eligible for release to mandatory supervision, that he has failed to state a claim for habeas corpus relief.

In his response to the motion for summary judgment Petitioner contends that he is trying to gather evidence, including statements from witnesses, in support of his claims that he is not guilty of the disciplinary charges.   Witnesses are reluctant to provide

---

[3] The amount of good conduct time an inmate can earn depends on his Line Class.  When offenders enter TDCJ they are assigned a time-earning status of Line Class 1 and may work their way into a higher time-earning status or be placed in a lower time-earning status, depending on their behavior.  The number of good conduct days which may be earned in a particular Line Class is fixed by statute. *TDCJ Offender Orientation Handbook*, rev. February 2017, at p. 8.
http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (last viewed May 18, 2017).
[4] "DGR" refers to the Disciplinary Grievance Record located at D.E. 9-1.

statements because they fear retaliation from prison officials.  He claims that the Court should not move forward to resolve his claims until he has had a chance to gather evidence.  Petitioner also argues that he has a liberty interest in parole.  Finally, Petitioner complains about conditions he faces based on his custodial classification.

## APPLICABLE LAW

### A.  Due Process Rights

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that under certain circumstances a state may create liberty interests which are protected by the Due Process Clause.  *Id.* at 483-484 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)).  However the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that while prisoners do not shed all constitutional rights are the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977) and *Price v. Johnston*,

334 U.S. 266, 285 (1948)).  "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Id.*  The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life.  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)(citing *Sandin*, 515 U.S at 484).  Petitioner's complaints are examined in light of this standard.

### 1.  Line Class

Petitioner was demoted in line class from S3 to L1.  Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests."  *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)).  "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)).  *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).  Thus, Petitioner cannot make out a cause of action based on the reduction in line class.

In his response to the motion for summary judgment, Petitioner claims that his line class has been restored and as a consequence, he was granted parole immediately.  Based

6 / 11

on that, he argues that in his case he can show that he suffered loss of a liberty interest because without the disciplinary case, he would already have been released to parole.

Despite what occurred in Petitioner's case, the Fifth Circuit has clearly held that prisoners in general have no protectable liberty interest in their custodial classifications. Although Petitioner was granted parole after his line class was restored, at no point did he have a guarantee that parole would be granted.  His argument to the contrary is without merit in the face of established law.

### 2.  Conditions of Confinement

Petitioner complains that as a result of the change in custody level, he was confined to punitive housing where he was forced to remain in his cell for long periods of time, had no dayroom access, had more limited hours of recreation, and suffered other deprivations (D.E. 12 at p. 6).  He argues that the changes caused him to experience an atypical and significant hardship.  Petitioner contends that *Sandin* should not be applied to Texas inmates because that case examined conditions of administrative segregation in Hawaii and prisoners in administrative segregation in Texas are deprived to such an extent that it poses a major disruption to the prisoner's environment.

The Fifth Circuit has applied *Sandin* consistently to claims by prisoners that they have a liberty interest in their custodial classification.  *See, e.g., Sanchez v. Allen*, 611 Fed. Appx. 792, 794 (5th Cir. 2015); *Odneal v. Hinojosa*, 357 Fed. Appx. 598 (5th Cir. 2009)(per curiam); *Madison*, 104 F.3d at 768.  Applying *Sandin* to this case leads to the conclusion that Petitioner has failed to state a claim that he suffered the loss of a liberty interest based on his custodial classification.

### 3. Loss of Good Time

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)(citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)).[5] Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. Tex. Gov't Code Ann. §508.147 (West 2014). The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.

However, prisoners who commit certain offenses are excluded from eligibility for mandatory release. *See* Tex. Gov't Code § 508.149 (a) (West 2016) (lists offenses that render an inmate ineligible for release to mandatory supervision).[6] In this case, Petitioner's convictions for attempted capital murder and aggravated assault preclude his release to mandatory supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.18 § 8(c) (West 1997) and Tex. Code Crim. Proc. Art. 42.12 §3g(a) (West 1995). Because Petitioner is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good time credits and thus has failed to make out a claim that his due

---

[5] Currently located at Tex. Gov't Code Ann. § 508.001(5).
[6] Formerly Tex. Code Crim. Proc. Ann. art. 42.18 § 8(c).

process rights have been violated.  Accordingly, summary judgment should be entered for Respondent.

### B.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In Petitioner's case, it is recommended that his cause of action be denied on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that Petitioner failed to state a claim for violation of a constitutional right.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 8) be GRANTED. Petitioner's cause of action for habeas corpus relief should be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 22nd day of May, 2017.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).